# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7527 | **DATE** | December 1, 2003 |
| **CASE TITLE** | US ex rel Jerry Ward | v | Eugene McAdory, etc. |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Hearing

(5) ☐

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Memorandum opinion and order entered. Accordingly, petitioner's second amended petition for a writ of habeas corpus is denied pursuant to 28 USC §2254[R.56]. This case is terminated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| X | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | date docketed |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| GDS | courtroom deputy's initials | date mailed notice |

Document Number

CLERK U.S. DISTRICT COURT

03 DEC -2 AM 11: 41

Date/time received in central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. JERRY WARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No.    99 C 7527 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| EUGENE McADORY,[1] Warden, Menard | ) | |
| Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Following a jury trial in the Circuit Court of Cook County, petitioner, Jerry Ward, was

convicted of two counts of murder, one count of armed robbery, and possession of a stolen motor

vehicle, and was sentenced to death for the two counts of murder. After his direct and post-

conviction appeals to the Illinois Supreme Court, petitioner petitioned this court for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. On January 11, 2003, former Illinois Governor

George Ryan commuted petitioner's death sentence to natural life in prison without the

possibility of parole. Before this court is petitioner's second amended petition for a writ of

habeas corpus filed after the commutation of his death sentence. For the reasons stated below,

this court denies petitioner's habeas petition.

---

[1]Eugene McAdory is currently the Warden at the Menard Correctional Center and is
thereby the proper respondent in this habeas action. *See* Rule 2(a) of the Rules Governing
Habeas Corpus Cases under 28 U.S.C. § 2254. Therefore, this court substitutes McAdory as the
respondent. *See* Fed. R. Civ. P. 25(d)(1).

# I. BACKGROUND

## A. Procedural History

Following a trial in the Circuit Court of Cook County, a jury found petitioner guilty of the murders of Bruce Herd and Pamela Williams, the armed robbery of Herd, and possession of a stolen motor vehicle. Petitioner waived his right to a sentencing jury. The trial court then found petitioner eligible for the death penalty. After finding that there were insufficient mitigating factors to preclude the imposition of the death penalty, the court sentenced petitioner to death for the two murders, a 30-year term of imprisonment for the armed robbery, and three years' imprisonment for the possession of a stolen motor vehicle.

Petitioner filed a direct appeal with the Illinois Supreme Court, which affirmed his convictions and sentences on November 19, 1992. *See People v. Ward,* 154 Ill.2d 272 (Ill. 1992) (*"Ward I"*) . Petitioner then filed a post-conviction petition with the Cook County Circuit Court pursuant to the Illinois Post-Conviction Hearing Act. Petitioner filed an amended petition for post-conviction relief on July 12, 1995. The Cook County Circuit Court granted the State's motion to dismiss the post-conviction petition without conducting an evidentiary hearing. The Illinois Supreme Court affirmed the trial court's decision on February 17, 1999. *See People v. Ward,* 187 Ill.2d 249 (Ill. 1999) (*"Ward II"*).

## B. Trial Evidence

The recitation of facts is drawn from the Illinois Supreme Court's rulings on petitioner's direct and post-conviction appeals. Unless a habeas petitioner provides clear and convincing evidence to the contrary, a determination of a factual issue by a state court is presumed correct for the purposes of habeas review. *See* 28 U.S.C. § 2254(e)(1); *Mahaffey v. Schomig,* 294 F.3d

907, 915 (7th Cir. 2002). Petitioner does not challenge the Illinois Supreme Court's factual determinations.

At petitioner's jury trial, Clara Herd Johnson testified that on February 15, 1986, her brother, Bruce Herd, came to her house between 6:30 and 7:30 p.m. After about ten minutes, Johnson testified that Herd and others left her house with the keys to her 1977 Buick. Gerald Williams, Pamela Williams' father, testified that around 7 to 8 p.m. on that same day, Herd arrived at the Williams' apartment where Herd's girlfriend, Pamela, also lived. Gerald Williams testified that his daughter and Herd remained at the apartment for a short time. When they left, they said they were going to buy some beer.

Curtis Rollins, who lived on the West Side of Chicago, testified that he was in bed asleep on the night of February 15, 1986, when at approximately 9:20 p.m. he heard two gunshots. Rollins looked out the window but could not see anything because a garage blocked his view. Rollins testified that he went to the store around 11 p.m. On his return, Rollins stated that he saw a body lying in front of a garage in the alley. The body was later identified as Pamela Williams.

Chicago Police Officers Joseph Scardino, James Peck, and James Summerville testified that they responded to a call concerning a man being dumped from a car. Shortly thereafter, they drove to the scene where they saw a black male lying in the snow with a gunshot wound to his skull. The man was later identified as Bruce Herd. Officer Scardino further testified that while he was leaving the scene accompanied by his partner, he heard a description of the "suspect vehicle" over the police radio. The vehicle was described as a gray Oldsmobile with the left rear bumper protruding from the car. Shortly thereafter, Officer Scardino saw a gray car traveling in

3

the opposite direction. Officer Scardino testified that he slowed down his squad car as the gray car drove through the intersection, noticing that the car fit the description of the suspect vehicle.

Officer Scardino also testified that after seeing the squad car, the driver of the gray vehicle sped away. Officer Scardino made a U-turn and followed the car into an alley where the car then struck a building. Officer Scardino approached the car on the passenger side while his partner approached the driver's side. Petitioner, who was driving the car, had his hands in the air. While his partner opened the driver's side door, petitioner reached into his waistband with his right hand and flipped a gun onto the front seat. Petitioner then raised his hands back into the air. Officer Scardino testified that his partner pulled petitioner out of the car while he assisted in the arrest. The officers recovered a revolver and two spent cartridges. Officer Scardino testified that he saw a "red substance in the form of dots" as well as "white fleshy material or matter" on the car and on petitioner's face and clothes.

Chicago Police Officers Peck and Summerville testified that they responded to a radio call and eventually arrived at the scene of petitioner's arrest. Officers Peck and Summerville both testified that they saw a red substance and white flesh on petitioner's face and on the front of his clothing. They also stated that they saw the same red substance and white flesh on the trunk of and right rear of the car. Another Chicago Police Officer testified that he arrived at an alley on Chicago's West Side where he saw a woman, later identified as Pamela Williams, lying in the snow with her head "bashed in." He testified that a tire jack and hat were also lying in the snow near Williams' body and that the crime laboratory personnel arrived approximately 30 minutes after he did.

4

The State also presented testimony regarding the physical evidence in this case. A serologist for the Chicago Police Department crime lab analyzed the blood samples submitted. She examined petitioner's clothing, as well as samples from the tire jack, the car trunk, and the car's right fender. The bloodstains were found to be consistent with the blood of Pamela Williams, but inconsistent with Bruce Herd's or petitioner's blood.

Other trial testimony included that of a chemist in the Chicago Police Department crime lab, who performed the gunshot residue analysis. She determined that swabs taken from petitioner's hands were consistent with his having recently discharged a handgun. A pathologist performed an autopsy on both Herd and Williams and testified that he recovered a lead bullet from the front of Herd's neck and determined that the cause of Herd's death was a gunshot wound to the back of the head. His examination of Williams revealed 46 external injuries and 11 internal injuries. The pathologist also testified that the cause of Williams' death was multiple injuries due to beating and that Williams' injuries were such that brain matter may have been ejected.

The State also presented the testimony of a firearm expert, who examined the gun and casings seized at petitioner's arrest. He testified that he was unable to determine conclusively that the recovered bullet had been fired from the gun taken from petitioner. He did conclude, however, that the bullet had been fired from the type of gun recovered from petitioner. Another trial witness, who was a Chicago Police Officer and latent print examiner, analyzed the prints taken from the exterior of the car and its contents. He determined that a print recovered from the exterior passenger window and from a plastic cup found in the car was made by petitioner. One print recovered from a soft drink can that was recovered at the scene of petitioner's arrest

5

belonged to Williams. A finger print from a plastic cup and a soft drink can, both recovered at the scene of petitioner's arrest, belonged to Herd.

After the State rested its case, the defense moved for a directed verdict on the armed robbery. The trial court denied the motion. Defense counsel then called Chicago Police Detective, Warren Gavin, as a witness. Detective Gavin testified that he had interviewed Curtis Rollins on February 17, 1986, and that Rollins did not tell him that he had heard two shots fired at 9:20 p.m. on February 15, 1986. Defense counsel also attempted to introduce petitioner's statement made to the police explaining how he had acquired the car, but the judge ruled that the statement was inadmissible hearsay. In his statement, petitioner indicated that he came upon the car while it was running with a gun on its seat. He stated that he got in on the passenger side, slid over, and drove away.

Defense counsel then asked for a continuance to locate further witnesses. The court granted a short recess to locate the witnesses; however, defense counsel located only one witness during the time allowed. Petitioner chose not to have the one individual testify, but instead, rested his case.

## II.  MOOT SENTENCING CLAIMS

On January 11, 2003, former Illinois Governor George Ryan commuted petitioner's death sentence to natural life in prison without the possibility of parole. There are no challenges pending in any court related to this commutation. Since petitioner's commutation, the Illinois Supreme Court has issued decisions on direct appeal and modified decisions on the denial of rehearing in other death penalty cases. In these cases, the Illinois Supreme Court concluded that former Governor Ryan's commutation of the defendants' death sentences rendered moot all

6

capital sentencing claims. *See, e.g., People v. Ceja,* 204 Ill.2d 332 (2003) (commutation removes judicially imposed sentence replacing it with executively imposed sentence); *People v. Lucas,* 203 Ill.2d 410 (2003) (same). In a denial of an application for a certificate of appealability pursuant to 28 U.S.C. § 2253(c), the United States Court of Appeals for the Seventh Circuit concluded that due to the commutation of an Illinois prisoner's death sentence, the prisoner's habeas claims based on his death sentence were now moot. *See Wilson v. Mote,* No. 03-1943, slip op. at 1 (7th Cir. June 18, 2003).

Although petitioner amended his habeas petition since the commutation of his death sentence, he nevertheless includes seven death penalty claims in his second amended habeas petition. Contrary to petitioner's contention that these claims are still valid, this court concludes that any claims challenging his death sentence are now moot. These claims include: (1) he was sentenced by the trial court and not a jury in violation of *Ring v. Arizona,* 536 U.S. 584 (2002); (2) he did not knowingly and intelligently waive his right to a sentencing jury; (3) there was insufficient evidence to prove his eligibility for the death sentence beyond a reasonable doubt; (4) he was denied a fair and reliable sentencing hearing; (5) the death penalty is not an appropriate penalty in this case; (6) a "death row phenomenon" claim; and (7) ineffective assistance of counsel at the capital sentencing hearing.

## III.   HABEAS STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may entertain an application for a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254 (a); *Aleman v. Sternes,* 320 F.3d 687, 690 (7th Cir. 2003). In considering a

habeas corpus petition filed by a state prisoner challenging his conviction or sentence on legal grounds, federal courts are guided by 28 U.S.C. § 2254(d)(1), which provides that the writ of habeas corpus may be granted only if the adjudication of the prisoner's claims in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court clarified the meaning of "contrary to" and "unreasonable application of" as used in § 2254(d)(1). For a decision to be "contrary to" clearly established Federal law, it must be "substantially different" from relevant Supreme Court precedent. *See id.* at 405. This situation arises if: (1) the state court applies a rule that contradicts the governing law as set forth by the Supreme Court; or (2) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nonetheless arrives at a different result. *See id.* at 405-06.

A decision involves an "unreasonable application of" clearly established Supreme Court law when the state court identifies the correct legal rule but applies it unreasonably. *Id.* at 409-10. Recently, the Supreme Court explained that an unreasonable application is not an erroneous application, even if the error is clear. *See Lockyer v. Andrade,* 123 S.Ct. 1166, 1171-72 (2003). Instead, a state court's decision must be objectively unreasonable. *See id.* In order for a state court decision to be considered unreasonable under this standard it must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002); *see also Rice v. McCann,* 339 F.3d 546, 548 (7th Cir. 2003) (reasonable state court application of federal law is at least minimally consistent with facts and circumstances of case).

## IV. PETITIONER'S PROCEDURALLY DEFAULTED CLAIMS

Before this court can reach the merits of petitioner's habeas claims, he must clear two procedural hurdles – exhaustion of remedies and procedural default. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 848 (1999). State remedies are exhausted if they are presented to the highest court for a ruling on the merits or when no means of pursuing review remain available. *See id.* at 844-47 (citing 28 U.S.C. § 2254(c)). The parties do not dispute that petitioner has exhausted his state court remedies.

Procedural default occurs when a habeas petitioner fails to present a constitutional claim to the highest state court to which it may be appealed in the manner required by state law. *See id.* at 845; *see also Engle v. Isaac,* 456 U.S. 107, 129 (1982) (state appellate courts must have chance to mend their own fences and avoid federal intrusion). A habeas claim may also be procedurally defaulted if the state court rests its judgment on an adequate and independent finding of procedural default under state law. *See Stewart v. Smith,* 536 U.S. 846, 860 (2002); *see also Wright v. Walls,* 288 F.3d 937, 947 (7th Cir. 2002) (waiver is independent and adequate state ground in Illinois).

A federal court may not grant habeas relief on a procedurally defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the defaulted claims will result in a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

### A. Claims Based on Trial Court's *Ex Parte* Communications

First, petitioner contends that he was denied his constitutional right: (1) to be present at all critical stages of his proceedings; (2) to have counsel at all stages of the proceedings; and (3)

to a public trial. He bases these three claims on the trial court's alleged *ex parte* examination of prospective jurors during *voir dire* and an alleged *ex parte* conversation with an investigating police officer. Petitioner concedes that these three claims were not previously raised to the Illinois courts and that they are therefore procedurally defaulted.

Instead of attempting to overcome this procedural default with arguments of cause and prejudice or that a fundamental miscarriage of justice will occur if this court does not address the merits of these claims, *see Coleman,* 501 U.S. at 750, petitioner argues that the denial of these rights constitute a "structural defect in the trial mechanism." *See Brecht v. Abrahamson,* 507 U.S. 619, 629 (1993) (structural defects require automatic reversal because they infect the entire trial process). Basically, petitioner is attempting to use a method of determining whether trial error was harmless to overcome procedural default. *See Gosier v. Welborn,* 175 F.3d 504, 510 (7th Cir. 1999).

This court cannot excuse petitioner's defaulted claims based on his allegation that his substantive claims turn on structural errors. The nature of a constitutional claim may affect the court's cause and prejudice calculus, but it does not alter the threshold requirement that habeas petitioners who bring constitutional claims to the federal courts after a state procedural default must demonstrate cause and actual prejudice before obtaining relief. *See Engle,* 456 U.S. at 129. In other words, like all other procedurally defaulted claims – regardless of the underlying constitutional claim – petitioner must establish cause and prejudice or that a fundamental miscarriage of justice will occur before this court can reach the merits of his defaulted claims. *See Coleman,* 501 U.S. 750. As the United States Supreme Court recently emphasized: "We therefore require a prisoner to demonstrate cause for his state-court default of *any* federal claim,

and prejudice therefrom, before the federal habeas court will consider the merits of that claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (emphasis in original) (only exception to cause and prejudice rule is fundamental miscarriage of justice). Accordingly, because petitioner has failed to overcome his procedural default, this court is barred from collaterally reviewing his first three habeas claims.

### B.    Perjured Testimony

Petitioner's next claim is based on what he alleges is the perjured testimony of Chicago Police Detective Summerville. The officer testified that he saw "white fleshy matter" on petitioner at the scene of his arrest. According to petitioner, Summerville was not at the scene of his arrest.[2] Petitioner admits, however, that he never raised this argument to the Illinois courts. As such, this claim is procedurally defaulted. *See Boerckel*, 526 U.S. at 845 (petitioner must give state courts opportunity to act on constitutional claims before presenting claims in federal habeas petition).

Once again, petitioner argues structural defect to overcome his procedural default. As discussed above, this argument is without merit. *See Engle*, 456 U.S. at 129 (despite underlying constitutional claim, threshold inquiry of cause and prejudice or miscarriage of justice must be met to overcome procedural default). Because petitioner makes no argument as to cause and prejudice or that a miscarriage of justice will occur if this court does not consider this claim, *see*

---

[2]Petitioner argues that a merits determination of the officer's perjured testimony would result in a finding that petitioner did not murder Pamela Williams, and thus he would not be eligible for the death penalty based on this second murder. Because petitioner is now serving a sentence of life imprisonment, this argument regarding his former death sentence is moot.

*Coleman,* 501 U.S. at 750, this court is barred from reviewing petitioner's perjured testimony claim.

### C.    Brady Claim

Next, petitioner contends that he was deprived a fair trial because the State improperly suppressed a Polaroid photograph of him taken shortly after his arrest that he claims was exculpatory evidence. *See Brady v. Maryland,* 373 U.S. 83 (1963). Petitioner, however, did not bring this claim to the Illinois courts, thereby, procedurally defaulting it. *See Boerckel,* 526 U.S. at 845. Petitioner does not argue cause and prejudice or that a fundamental miscarriage of justice will occur if this court does not address this claim. *See Coleman,* 501 U.S. at 750. Therefore, he has not overcome procedural default, and this court is barred from collaterally reviewing this claim.

### D.    Illinois Pattern Jury Instructions

Petitioner contends that he was denied his constitutional rights to due process, equal protection, and other unidentified constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because the trial court gave jury instructions that were contrary to law. The Illinois Supreme Court, however, concluded that petitioner waived his right to challenge the jury instructions because he did not bring this claim on direct appeal. *See Ward II,* 187 Ill.2d at 264.

If an Illinois appellate court concludes that a claim is waived, that holding constitutes an independent and adequate state ground. *See Wright,* 288 F.3d at 947. Therefore, this court cannot review this claim on collateral review. *See Stewart,* 536 U.S. at 860 (federal habeas courts cannot review questions of federal law if state court decision rests on a state procedural

ground that is independent of the federal question and adequate to support the judgment).

Petitioner has not argued cause and prejudice or that a fundamental miscarriage of justice will

occur if this court does not consider his claim. *See Coleman*, 501 U.S. at 750. Accordingly, this

court is barred from reviewing his jury instruction claim. This court now turns to the merits of

petitioner's remaining habeas claims.

## V.  PETITIONER'S REMAINING NON-CAPITAL HABEAS CLAIMS

### A.  Prosecutorial Misconduct

First, petitioner contends that the prosecutor's misconduct resulted in the denial of his

constitutional right to due process. Specifically, petitioner advances seven instances of alleged

prosecutorial misconduct, including that the prosecutor: (1) made two remarks during closing

arguments attacking defense counsel; (2) vouched for the credibility of the State's witnesses and

the prosecutor's office; (3) made appeals to the jury's passions; (4) presented prejudicial victim

impact evidence; (5) improperly raised the issue of petitioner's unemployment; (6) made

deliberate efforts to conceal evidence of others' involvement in the crimes; and (7) violated one

of the trial court's evidentiary rulings.

When reviewing petitioner's first basis for prosecutorial misconduct, the Illinois Supreme

Court concluded that because counsel did not object to one of the prosecutor's closing remarks

regarding defense counsel, this claim was waived. *See Ward I,* 154 Ill.2d at 318-19. The Illinois

Supreme Court also concluded that petitioner's claims based on bolstering witness credibility,

appealing to the jury's passions, and presenting victim impact evidence were waived as well. *See*

*id.* at 321-22. Because waiver is an independent and adequate state ground and petitioner offers

no explanation for this procedural default, this court cannot review these specific bases of

petitioner's prosecutorial misconduct claim. *See Stewart,* 536 U.S. at 860; *Wright,* 288 F.3d at 947.

Next, petitioner brings the claim based on his unemployment and the argument that the prosecution deliberately concealed evidence of others' involvement for the first time to this court; therefore, these arguments are also procedurally defaulted. *See Mahaffey,* 294 F.3d at 914-15 (petitioner must present both operative facts and legal principles to state court first to preserve claim for habeas review). Because petitioner has not argued cause and prejudice or the fundamental miscarriage of justice exception, he has not overcome procedural default, and thus this court cannot consider the merits of these arguments. *See Coleman,* 501 U.S. at 750.

This court now turns to the Illinois Supreme Court's merits determination of the non-defaulted bases for petitioner's prosecutorial misconduct claim. In evaluating prosecutorial misconduct based on improper comments, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (citation and quotations omitted). To determine prosecutorial misconduct under *Darden,* the test is two-fold: (1) the reviewing court must determine whether the prosecutor's comments in isolation were improper – if the comments are proper the analysis ends; and (2) if the comments are improper, the reviewing court must examine the comments in light of the record as a whole to determine whether they deprived the defendant of a fair trial. *See Whitehead v. Cowan,* 263 F.3d 708, 728 (7th Cir. 2001).

Here, the Illinois Supreme Court concluded that the prosecutor's second remark attacking defense counsel was not prejudicial, and therefore, harmless error. *See Ward I,* 154 Ill.2d at 319.

Also, the Illinois court concluded that the prosecutor's comment that allegedly bolstered the State's credibility was proper. *See id.* at 320. Last, based on the trial court's finding that the prosecutor did not violate the court's evidentiary ruling, the Illinois Supreme Court declined to disturb the trial court's ruling. *See id.* at 321. Accordingly, petitioner has not overcome the first hurdle of the *Darden* test because he has not established that the prosecutorial misconduct he alleges was improper in the first instance. *See Whitehead,* 263 F.3d at 728 (if the comments are found proper, prosecutorial misconduct analysis ends).

Further, petitioner never addresses the Illinois Supreme Court's decision, and thus fails in his burden of establishing that the Illinois Supreme Court rejected his prosecutorial misconduct claim in a way that was either "contrary to" or an "unreasonable application of" clearly established Supreme Court law. *See Lechner v. Frank,* 341 F.3d 635, 638 (7th Cir. 2003); *see also Woodford v. Visciotti,* 537 U.S. 19, 24-25 (2003) (per curiam) (petitioner has burden in establishing state court applied facts in an objectively unreasonable manner). Thus, the court denies petitioner's prosecutorial misconduct claim.

**B.      Preclusion From Introducing Favorable Evidence**

Petitioner's next habeas claim is that he was precluded from introducing favorable evidence, that is, his statement that he came upon the car while it was running with a gun on its seat and that he got in on the passenger side, slid over, and drove away. On direct appeal to the Illinois Supreme Court, petitioner claimed that his statement should have been admitted into testimony based on the hearsay exception that it was a statement against his interest. *See Ward I,* 154 Ill.2d at 312-13. The Illinois Supreme Court concluded that this argument was without merit based on Illinois evidence law. *See id.* at 313. Specifically, the Illinois court concluded that this

15

Illinois hearsay exception was not meant to apply to a statement made by the actual party, but statements made by a non-party. *See id.* Petitioner now brings this claim in his federal habeas petition.

Federal habeas relief is unavailable to remedy errors of state law. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Because an error of state evidence law cannot be the basis of federal collateral relief, petitioner's claim is not cognizable on federal habeas review. *See Buie v. McAdory,* 341 F.3d 623, 625 (7th Cir. 2003). Therefore, this court cannot address this state law claim.

## C.    Right to Present a Defense

Petitioner claims that the trial court's denial of his request for a continuance so that he could secure additional defense witnesses violated his constitutional right to present a defense. Although the right to present a defense is grounded in the Sixth Amendment, this right is subject to reasonable restrictions. *See Taylor v. Illinois,* 484 U.S. 400, 409 (1988); *United States v. Scheffer,* 523 U.S. 303, 308 (1998) (state lawmakers have broad latitude to fashion rules which operate to exclude evidence from criminal trials). A violation of a defendant's right to present a defense occurs when the trial court denies the defendant the opportunity to present testimony that would have been material, relevant, and favorable to his defense. *See United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982).

To determine whether the trial court erred in denying the request for a continuance, thereby rendering the trial fundamentally unfair, this court must determine whether: (1) the defendant exercised due diligence to secure witnesses; (2) the witnesses would offer favorable

and relevant testimony; and (3) the defendant would be materially prejudiced by the denial of the continuance. *See Gardner v. Barnett*, 199 F.3d 915, 920 (7th Cir. 1999); *see also People v. Boland*, 205 Ill.App.3d 1009, 1013 (Ill.App.Ct. 1990).

Here, the Illinois Supreme Court considered these factors under *Boland* and concluded that petitioner had not shown that the potential evidence was relevant or that he was prejudiced by the denial of his request for a continuance. *See Ward I*, 154 Ill.2d at 307-09. Specifically, the Illinois court noted that at the time of the request for the continuance, petitioner sought the alibi testimony of William Rankin, Jedd Davis, and Stanley Miller. Petitioner subpoenaed Rankin, who refused to appear as a witness, and petitioner did not seek a warrant or aid from the trial court to compel Rankin's appearance. Davis was present in the courtroom, but petitioner chose not to have him testify. Although Miller did not testify, he told police officers that he was in a car drinking with friends when petitioner walked by and joined them, yet the date of this incident is unclear. *See id.* at 308-09. Based on this information, the Illinois Supreme Court concluded that petitioner did not establish that the alibi witnesses' testimony would have been relevant to his whereabouts at the time of the murders. *See id.*

This court concurs with the Illinois Supreme Court's reasoning and concludes that the Illinois court's decision was at least minimally consistent with the facts and circumstances of this case and, therefore, a reasonable application of Supreme Court precedent. *See Rice*, 339 F.3d at 548; *see also Hammer v. Karlen*, 342 F.3d 807, 810 (7th Cir. 2003)(if state court's decision is at least minimally consistent with facts and circumstances of case, federal habeas court is powerless to grant relief). Simply put, petitioner did not make a showing that his potential alibi witnesses'

testimony was material, relevant, and vital to his defense. *See Valenzuela-Bernal*, 458 U.S. at 867.

Last, although the Illinois Supreme Court relied on Illinois case law in analyzing petitioner's right to present a defense, under the AEDPA, the Illinois court is not required to cite United States Supreme Court cases or even be aware of such law, so long as neither the reasoning nor the result of the state court decision contradicts clearly established Supreme Court precedent. *See Early v. Packer,* 537 U.S. 3, 8 (2002). Here, the Illinois Supreme Court's reasoning and result did not contradict the Supreme Court's decision in *Valenzuela-Bernal. Id.* at 867 (defendant must make some plausible showing of testimony's materiality, relevancy, and that it is vital to his defense). Therefore, this court denies petitioner's right to present a defense claim.

### D.    Insufficiency of the Evidence

Petitioner's next claim is that the evidence presented at trial was insufficient to convict him of murder beyond a reasonable doubt. Specifically, he is challenging the reliability of the gunshot residue and the blood sample analyses. When assessing an insufficiency of the evidence claim, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The standard under *Jackson* "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

Applying this standard as outlined in *People v. Pintos,* 133 Ill.2d 286, 291-93 (Ill. 1989), the Illinois Supreme Court reviewed the trial evidence in detail before concluding "that the cumulative effect of all the evidence is sufficient, when viewed in the light most favorable to the State, to prove beyond a reasonable doubt that defendant murdered Herd and Williams." *Ward I,* 154 Ill.2d at 315-16. The Illinois Supreme Court acknowledged that the gunshot residue test may have been less than 100 percent accurate and that the blood sample procedures were not conclusive as to petitioner's guilt. *See id.* The Illinois court, however, viewed these shortcomings in conjunction with the remainder of the trial evidence and concluded that the evidence was sufficient to prove petitioner guilty beyond a reasonable doubt. *See id.* at 316. This court concludes that this decision is minimally consistent with the facts and circumstances of the case, and thus a reasonable application of *Jackson. See Rice,* 339 F.3d at 548. In other words, the Illinois Supreme Court's decision does not lie "well outside the boundaries of permissible differences of opinion." *See Hardaway,* 302 F.3d at 762.

Petitioner, on the other hand, claims that the evidence against him was circumstantial, and thus insufficient to convict him of murder. It is well-established, however, that circumstantial evidence is sufficient to prove the elements of a crime beyond a reasonable doubt. *See Jackson,* 443 U.S. at 324-25; *United States v. Gracia,* 272 F.3d 866, 874 (7th Cir. 2001) ("circumstantial evidence is sufficient support, and may be the sole support, for a conviction"). Because petitioner has not met his burden in establishing that the Illinois Supreme Court's decision was an objectively unreasonable application of *Jackson,* this court denies petitioner's insufficiency of the evidence claim as to his murder convictions. *See Woodford,* 537 U.S. at 24-25.

Petitioner also argues that there was insufficient evidence to prove that he was guilty of armed robbery beyond a reasonable doubt. Once again, he argues that the evidence underlying his conviction was circumstantial, and thus insufficient to establish his conviction. As with petitioner's *Jackson* challenge to his murder convictions, this court must reject this argument as well. *See Jackson*, 443 U.S. at 324-25 (circumstantial evidence is sufficient to support conviction).

### E.     Ineffective Assistance of Counsel

Petitioner next claims that both his trial and appellate counsel were constitutionally ineffective. To prevail on a claim of ineffective assistance of counsel, petitioner must established both the performance and prejudice prongs under *Strickland v. Washington,* 466 U.S. 668, (1984). Under the first prong of the *Strickland* standard, petitioner must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88 (measure of attorney performance is reasonableness under prevailing professional norms). Under the *Strickland* prejudice prong, petitioner must demonstrate that it is reasonably likely that, but for his counsel's errors, the decision reached would have been different. *Id.* at 696. Because the *Strickland* inquiry is a balancing test rather than a bright-line rule, only clear error in applying *Strickland* can support a writ of habeas corpus. *See Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997).

### 1.     Ineffective Assistance of Trial Counsel

#### a.     Evidence Favorable to Petitioner

First, petitioner contends that based on a review of the police reports, there was evidence that more than one person might have been involved in the murders of Herd and Williams.

Accordingly, petitioner argues that his trial counsel was constitutionally ineffective by failing to present this favorable evidence in his defense. In addressing this claim, the Illinois Supreme Court considered petitioner's post-conviction affidavits and concluded that petitioner had not established that the outcome of the trial would have been different had this evidence been presented. *See Ward II,* 187 Ill.2d at 258. The Illinois court reviewed petitioner's evidence and attendant arguments that he knew the victims, was drinking with them on the night of the murders, and that a second person was involved in the crime. *See id.* The Illinois court then concluded that because this evidence did not exonerate petitioner or diminish the evidence supporting petitioner's participation in the murders, petitioner had not shown that he was prejudiced by his counsel's failure to investigate and present this evidence. *See id.*

This court concludes that the Illinois court's decision is at least minimally consistent with the facts and circumstances of this case, and thus was a reasonable application of *Strickland,* especially in light of the substantial evidence of petitioner's guilt. *See Rice,* 339 F.3d at 548. Any evidence that others may have participated in the murders does not make petitioner less culpable, and therefore, could not affect the result of his trial. *See Strickland,* 466 U.S. at 696 ("but for counsel's unprofessional errors, the result of the proceeding would have been different"). As such, the Illinois court's decision was a reasonable application of *Strickland* under § 2254(d)(1).

Petitioner makes no argument as how the Illinois Supreme Court erred in its application of *Strickland* to this claim. Because the *Strickland* inquiry is a balancing test rather than a bright-line rule and this court concludes that there was no clear error, petitioner's first ineffective assistance of trial counsel claim fails. *See Holman,* 126 F.3d at 882.

### b.    Testimony Concerning Brain Matter

In his next claim, petitioner contends that his counsel was constitutionally ineffective for failing to object to the testimony of police officers Scardino and Summerville, who testified that they saw blood and white fleshy matter on petitioner's face, clothing, and car, linking him to the Williams' murder. In reviewing this claim, the post-conviction Illinois Supreme Court concluded:

> This argument is meritless for two reasons. First, in *Ward I* this court held that this evidence was proper .... Defendant argued in *Ward I* with respect to the testimony of only one of the officers. The court held that the evidence was proper and, in any event, defense counsel successfully objected to the identification of the evidence as brain matter. Second, defendant's argument with respect to the other testimony and its cumulative effect is waived because it was not made on direct appeal and is not based on evidence outside of the original trial record.

*Ward II,* 187 Ill.2d at 259-60 (internal citation omitted).

This decision is consistent with the facts and circumstances of the case and therefore is an objectively reasonable application of *Strickland. See Rice,* 339 F.3d at 548. As the post-conviction Illinois court articulated, despite petitioner's claim to the contrary, his trial counsel successfully objected to Officer Scardino's identification of the evidence as brain matter. *See Ward I,* 154 Ill.2d at 296. Any claim based on counsel's failure to object to Detective Scardino's testimony, therefore, is baseless. In addition, because petitioner waived his ineffective assistance claim based on Detective Summerville's testimony, it is procedurally defaulted. Because petitioner offers no explanation for this default, this court is barred from reviewing this part of his claim. *See Coleman,* 501 U.S. at 750.

### c.     Failure to Object to Prosecution's Remarks at Closing

Petitioner claims that he was denied effective assistance because defense counsel should have objected to the prosecutor's remarks at the State's closing argument, including remarks that: (1) bolstered the credibility of the police regarding brain matter testimony; (2) appealed to the juror's passions; and (3) were based on allegedly false facts regarding the close firing range of Herd. The post-conviction Illinois Supreme Court concluded that these claims were waived because petitioner did not raise them on direct appeal.[3] *See Ward II*, 187 Ill.2d at 260. Because waiver is an independent and adequate state court ground, *see Wright*, 288 F.3d at 947, these claims are procedurally defaulted. *See Stewart,* 536 U.S. at 860. Because petitioner offers no explanation for this procedural default, and thus, this court cannot consider these claims on collateral review. *See Coleman*, 501 U.S. at 750.

### d.     Murder Jury Instruction

Petitioner contends that his trial counsel was constitutionally ineffective for failing to object to the trial court's use of an erroneous jury instruction or raising the improper instruction as grounds for a new trial. On post-conviction review, the Illinois Supreme Court concluded that petitioner waived this claim because he did not bring it on direct appeal. *See Ward II,* 187 Ill.2d at 264 (issue had basis in trial record and could have been raised on direct appeal). Because waiver is an independent and adequate state court ground, this claim is procedurally defaulted.

---

[3]Alternatively, the Illinois Supreme Court concluded that petitioner did not establish prejudice under *Strickland* because on direct appeal the court held that the prosecutor's closing comments were not reversible error. *See Ward II*, 187 Ill.2d at 260. Nonetheless, because the Illinois Supreme Court clearly relied on waiver, this court need not review this alternative merits determination. *See Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003) (if both merits and state procedural bar are discussed, procedural grounds will be determinative if they are clearly presented and constitute an adequate and independent ground).

*See Stewart*, 536 U.S. at 860; *Wright*, 288 F.3d at 947. Petitioner has not argued cause and prejudice or that a fundamental miscarriage of justice will occur if this court does not consider his claim. *See Coleman*, 501 U.S. at 750. Accordingly, this court is barred from collaterally reviewing petitioner's jury instruction claim.

### e.    Cross-Examination of State's Scientific Experts

In his next claim, petitioner argues that he was denied constitutionally effective assistance of trial counsel based on counsel's failure to sufficiently cross-examine the State's four scientific experts, including experts in serology, pathology, and gunshot residue.[4] The post-conviction Illinois Supreme Court concluded that as to three of these experts, petitioner's claim was waived because he did not raise them on direct appeal. *See Ward II,* 187 Ill.2d at 260-61. As petitioner correctly claims in his habeas petition, however, the Illinois Supreme Court erred in its determination that this claim was waived because its resolution required a review of evidence that was outside of the trial record. Under the Illinois law, the waiver rule does not apply if the factual basis for a claim of ineffective assistance of counsel is not contained within the original trial court record, and therefore, could not have been considered on direct appeal. *See People v. Patterson*, 192 Ill.2d 93, 129 (Ill. 2000). Because the Illinois Supreme Court did not consider the merits of this claim, this court reviews this claim under 28 U.S.C. § 2243, which requires this court to "dispose of the matter as law and justice require." *See Braun v. Powell*, 227 F.3d 908, 917 (7th Cir. 2000).

---

[4] As to the fourth expert, petitioner failed to bring this claim to the Illinois courts in the first instance. *See Boerckel*, 526 U.S. at 845 (petitioner must give state courts opportunity to act on constitutional claims before presenting claims in federal habeas petition). Hence, this claim is procedurally defaulted and petitioner fails to overcome this default by arguing cause and prejudice or the fundamental miscarriage of justice exception. *See Coleman,* 501 U.S. at 750.

In support of his claim that counsel failed to effectively cross-examine the State's scientific experts, petitioner filed the affidavit of Christine Kokocinski-Sahs, a forensic scientist formerly employed as a micro-analyst for the Chicago Police Department crime laboratory and as a forensic analyst for the DuPage County Sheriff's Office crime laboratory. In her affidavit, Kokocinski-Sahs avers that the serologist overstated her qualifications and findings, including the testimony that the stains on petitioner's pants were blood, when the tests indicated only that the stains might have contained blood. The affidavit also reveals that the pathologist's postmortem report of Herd stated that the bullet coursed from the front to back of Herd's skull, yet also stated that the bullet went from the back to the front. Last, the affidavit states that the gunshot residue expert failed to use a more accurate test than the one she used.

Petitioner argues that had his trial counsel investigated and done a better job preparing for the cross-examination of these experts, the State's expert evidence would have been weaker and, therefore, there is a reasonable probability that the result of his trial would have been different. *See Strickland*, 466 U.S. at 697. Indulging a strong presumption that the trial counsel's performance was constitutionally effective, and based on the overwhelming evidence of petitioner's guilt, this court concludes that petitioner was not prejudiced by counsel's failure to cross-examination the State's expert witnesses as described in the Kokocinski-Sahs affidavit. *See Ward I*, 154 Ill.2d at 317-18. Other evidence in support of petitioner's murder convictions includes conclusive finger print evidence and considerable witness testimony of conduct before, during, and after petitioner's arrest. The fact that defense counsel did not impeach the scientific experts about the accuracy of the gunshot residue test, the spots on petitioner's pants that might have been blood, and whether the bullet went from the front to the back of Herd's skull, instead

25

of the opposite as the pathologist testified, does not diminish the substantial evidence of petitioner's guilt.

Accordingly, under the standard as set forth in 28 U.S.C. § 2243, this court concludes that petitioner's *Strickland* claim based on his trial counsel's cross-examination of the State's scientific experts is without merit because petitioner has failed to establish prejudice under *Strickland*.

### f.    Cumulative Effect of Counsel's Errors

Petitioner argues that the cumulative effect of trial counsel's errors violated his right to effective assistance of counsel under *Strickland*. Indeed, a habeas petitioner can establish ineffective assistance of trial counsel by showing that "the cumulative effect of counsel's individual acts or omissions was substantial enough to meet *Strickland's* test." *Williams v. Washington*, 59 F.3d 673, 682 (7th Cir. 1995). However, because this court concludes that petitioner's ineffective assistance of trial counsel claims were either procedurally defaulted or without merit, there are no errors to accumulate. *See Hough v. Anderson*, 272 F.3d 878, 891 n.3 (7th Cir. 2001). The court, therefore, denies petitioner's cumulative effect claim as a basis for his ineffective assistance of trial counsel claim.

### 2.    Ineffective Assistance of Appellate Counsel

Petitioner next asserts, without any specific details or cogent legal argument, that his appellate counsel was constitutionally ineffective for "failing to raise all the claims herein." Petitioner admits, however, that many of these claims were not raised previously, but does not specify which claims were procedurally defaulted by his failure to raise them to the Illinois

courts. Also, he does not argue cause and prejudice or the fundamental miscarriage of justice exception to overcome his default.

Nevertheless, the proper standard for reviewing claims of ineffective assistance of appellate counsel is under *Strickland*. *See Williams*, 529 U.S. at 390-91. Under the first *Strickland* prong, appellate counsel's performance is deficient if counsel fails to appeal any issue that is both obvious and clearly stronger than the issues that were raised. *See Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001). To establish prejudice under the second *Strickland* prong, the petitioner must show that appellate counsel's failure to raise an issue might have resulted in the reversal of his conviction or an order for a new trial. *See id.* As with trial counsel, this court must indulge a strong presumption that appellate counsel was constitutionally effective. *See Strickland*, 466 U.S. at 688; *Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir. 1996).

Petitioner's argument in support of his ineffective assistance of appellate counsel claim states that counsel was ineffective for failing to raise ineffective assistance of trial counsel claims and to raise all the claims brought in his habeas petition. Without specific references and legal argument as to what claims appellate counsel failed to bring concerning trial counsel's ineffectiveness, petitioner's first argument is insufficient. In fact, on direct appeal to the Illinois Supreme Court, appellate counsel did raise four claims of ineffective assistance of trial counsel including counsel's failure to: (1) call witnesses at trial who were called at sentencing; (2) locate certain alibi witnesses; (3) file a motion *in limine* to preclude petitioner's prior convictions; and (4) object to the admission of certain evidence. *See Ward I*, 154 Ill. 2d at 317. As to each claim, the Illinois Supreme Court concluded that petitioner had failed to establish prejudice under *Strickland*. *See Ward I*, 154 Ill.2d at 317-18. Petitioner does not address the Illinois Supreme

Court's conclusion. In addition, because this court determined that petitioner's ineffective assistance of trial counsel claims raised in his habeas petition are either procedurally defaulted or without merit, any claims based on appellate counsel's ineffectiveness for not raising these claims are also without merit.

Petitioner also fails to sufficiently articulate and argue his second contention that appellate counsel erred by failing to raise all the claims brought in his habeas petition. Petitioner does not argue why these claims are stronger than the claims brought by his state appellate counsel and that counsel's failure to raise these claims might have resulted in the reversal of his conviction. *See Winters*, 274 F.3d at 1167. More importantly, petitioner never argues that the Illinois Supreme Court's decision as to his ineffective assistance of appellate counsel claim was either an "unreasonable application of" or "contrary to" *Strickland*. *See Lechner*, 341 F.3d at 638 (habeas petitioner bears burden of showing state court rejected constitutional challenges in manner that was "contrary to" or involved an "unreasonable application of" clearly established Supreme Court law). Therefore, petitioner has not met his burden in establishing that he was denied ineffective assistance of appellate counsel, and thus the court denies his claim.

### G.    Cumulative Effect Claim

Petitioner's last habeas claim is that the cumulative effect of the constitutional violations he alleges in his federal habeas petition deprived him of his constitutional right to fundamentally fair trial. Trial errors that are harmless standing alone may, when aggregated, amount to the denial of a habeas petitioner's right to due process. *See Alvarez v. Boyd,* 225 F.3d 820, 824 (7th Cir. 2000). To establish a constitutional deprivation based on cumulative errors, petitioner must

establish that: (1) the court committed at least two trial errors during his trial; and (2) these multiple errors denied him a fundamentally fair trial. *See id.*

Because this court concludes that petitioner's claims are either without merit or procedurally defaulted, he has not established that the trial court committed at least two trial errors. *See id.* Also, petitioner does not argue how these alleged errors denied him a fundamentally fair trial. *See id.* at 825 ("but for the errors, the outcome of the trial probably would have been different"). Therefore, petitioner has not made the requisite showing to establish a cumulative effect claim.

## VI.   EVIDENTIARY HEARING

Finally, petitioner requests an evidentiary hearing under § 2254(e)(2) to develop the factual record concerning most of his habeas claims. This court's ability to hold an evidentiary hearing allowing a habeas petitioner to add to an underdeveloped state court record is severely circumscribed because federal habeas courts are not an additional forum for petitioners to litigate facts and issues they failed to pursue in the state courts. *See Williams,* 529 U.S. at 437; *Boyko v. Parke,* 259 F.3d 781, 789-90 (7th Cir. 2001). Section 2254(e)(2) provides that, if a factual basis of a claim was not developed in the state court, the federal habeas court "shall not hold an evidentiary hearing" unless the petitioner can show that:

(A) the claim relies on –

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

29

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Because petitioner does not contend that a new rule of constitutional law applies to any of his habeas claims, he must establish that the failure to develop a factual record in the Illinois courts was not his fault. *See Williams*, 529 U.S. at 432. In addition, he must point to facts sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would find him guilty of the underlying offense. *See* 28 U.S.C. § 2254(e)(2)(B); *Harris v. McAdory*, 334 F.3d 665, 669-70 (7th Cir. 2003).

Petitioner never argues that the state court record's shortcomings were not his fault. *See Williams*, 529 U.S. at 432. Further, petitioner does not point to facts to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would find him guilty of the murders of Bruce Herd and Pamela Williams. *See Harris*, 334 F.3d at 669-70. Because petitioner has not fulfilled the requirements set forth in § 2254(e)(2)(B), this court denies his request for an evidentiary hearing.

## VII.  CONCLUSION

For the reasons set forth above, this court denies petitioner's second amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [R. 56]. This case is terminated.

**ENTER:**     **December 1, 2003**

**Robert W. Gettleman**
**United States District Judge**

30